IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                                     No. CV 07-0671 WJ/CEG
                                                            CR 03-1453 WJ

RANDALL ZUNIE,

        Defendant/Movant.

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

        This matter is before the Court on Randall Zunie's (Zunie) pro se § 2255 motion, which alleges ineffective assistance of counsel and errors in sentencing. *See Doc. 87*.[1] Following a car accident, a jury convicted Zunie of assault resulting in serious bodily injury. He was sentenced to 120 months imprisonment. All of the issues can be resolved on the record, and therefore, an evidentiary hearing is unnecessary. *See, e.g.*, *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996); *Rule 8(a), Rules Governing Section 2255 Cases In The United States District Courts*. For the reasons below, I find Zunie's § 2255 motion to be without merit and recommend that it be denied.

I. Background

        Shortly before midnight on May 10, 2003, Zunie, "dangerously drunk and recklessly out of control," drove his Dodge Ram into the opposite lane of traffic and collided head on with a smaller vehicle. *Zunie v. United States*, 444 F.3d 1230, 1232 (10th Cir. 2006). The collision left a four-year-old boy, Nicky Laweka (Nicky), permanently and severely disabled. *Id.* at 1237.

---

[1] All document references are to the underlying criminal case, CR 03-1453 WJ, unless otherwise noted.

Nicky's mother, Carla, suffered a fractured wrist, and his sister, Kayla, sustained injures to her right eye and two of her front teeth. *Id*. The accident occurred on the Zuni Reservation, approximately 150 miles west of Albuquerque. *Id*.

Pursuant to the Indian Major Crimes Act, 18 U.S.C. § 1151 et. seq., Zunie was charged with assault resulting in serious bodily injury, as well as assault with a dangerous weapon. *See Doc. 1*. The assault with a dangerous weapon charge was dismissed prior to trial. *See Doc. 52*. On April 7, 2004, a jury convicted Zunie of assault resulting in serious bodily injury. *See Doc. 57*.

At sentencing, the Court adopted the factual findings of the presentence report (PSR), which calculated Zunie's base offense level to be 15. *See Sent. Tr.* at 40. The PSR added six levels for bodily injury pursuant to U.S.S.G. § 2A2.2(b)(3)(C) and two levels for obstruction of a criminal investigation pursuant to U.S.S.G. § 3C1.1. *Id.* at 35, 40, 78. This brought Zunie's recommended offense level to 23. *Id*. The Court departed upward fifteen levels to an offense level of 38, which carries a guideline imprisonment range of 235 to 293 months. *Id.* at 80. Zunie, though, was sentenced to 120 months imprisonment, the statutory maximum. *See Sent. Tr.* at 80. In doing so, the Court noted, "[I]f I had jurisdiction to do so, I would impose a sentence of 293 months." *Id*. The Court also imposed an alternative sentence of 120 months "in the event the guidelines are determined to be unconstitutional." *Id*. at 83.[2]

On appeal, Zunie argued that: (i) he lacked the requisite intent for assault resulting in serious bodily injury, (ii) the Court's decision to impose a fifteen level upward departure was unreasonable, (iii) his sentence violates *United States v. Booker*, 542 U.S. 220 (2005), and (iv)

---

[2] In his statement at sentencing, Zunie told the Court: "And I do take responsibility and I do apologize. . . . It was never my will nor my intent to ever hurt anyone. . . . I step forward and I apologize . . . ." *Sent. Tr.* at 70-71.

the Court erred in imposing restitution without regard to Zunie's indigence and by ordering the total amount of restitution to be paid immediately. *See Zunie*, 444 F.3d at 1230-38. In a published opinion, the Tenth Circuit affirmed Zunie's conviction and sentence, but remanded the proceedings to establish a restitution payment schedule. *Id.* Of relevance to Zunie's § 2255 motion, the Tenth Circuit concluded that the degree of departure in Zunie's sentence was reasonable and that any constitutional or non-constitutional *Booker* errors were harmless.[3] *Id.* at 1236-38.

In his § 2255 motion, Zunie brings claims involving ineffective assistance of counsel and errors in sentencing. *See Doc. 88*. As for his sentencing claims, he argues that: (i) the Court committed constitutional *Booker* error, and (ii) his two-level increase for obstruction of justice is illegal. *Id*. at 5-18. Under ineffective assistance of counsel, Zunie claims his counsel was ineffective because he failed to: (i) complete an argument that the sentencing enhancements had to be made by a jury under a reasonable doubt standard, (ii) properly investigate Zunie's innocence defense, and (iii) present evidence which would have proven Zunie's innocence defense. *Id*. at 18-24. Consistent with his defense at trial, Zunie argues that a hitch-hiker he picked up named Stephen Qualo was driving the car at the time of the accident.[4]

---

[3] The Tenth Circuit has recognized two types of *Booker* errors, constitutional and non-constitutional. *See United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir. 2005). A constitutional *Booker* error arises when a court "[relies] upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id*. A non-constitutional error occurs when a sentencing court "appl[ies] the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." *Id*. at 731-32.

[4] Zunie states in his § 2255 motion that: "He now files this motion, because he has been unfairly, and unconstitutionally held responsible for someone else's actions, and has been unconstitutionally punished well beyond what was fair and legally proper." *Doc. 88* at 2.

II.  Sentencing Claims

A.  Constitutional *Booker* Error

In his first claim, Zunie asserts that the Court committed constitutional *Booker* error by "establishing every enhancement, outside of the jury findings, by a preponderance of the evidence . . . ." *Doc. 88* at 12.  In sum, Zunie claims that any enhancement to his sentence had to be made by a jury under a reasonable doubt standard of proof.  *Id.* at 5-12.

The United States contends that Zunie is barred from bringing this claim because it was previously raised on appeal and disposed of by the Tenth Circuit.  I agree.  Issues previously addressed and disposed of on appeal may not be considered again in a § 2255 motion.  *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994); *United States v. Cook*, 997 F.2d 1312, 1318 n.6 (10th Cir. 1993).

Even when considering the claim on the merits, Zunie's argument clearly lacks merit.  Contrary to Zunie's assertions, *Booker* made clear that sentencing facts need not be proved beyond a reasonable doubt.  Rather, as long as a district court applies the Guidelines in an advisory fashion, facts may be proved by a preponderance of the evidence.  *See United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005).  That is, provided the sentence imposed by the district court is within the range authorized by the statute under which the defendant was convicted, judicial fact-finding by a preponderance of the evidence does not violate the Constitution.  *See United States v. Crockett*, 435 F.3d 1305, 1319 (10th Cir. 2006).

Here, the Court issued an identical alternative sentence in the event the Guidelines were found to be unconstitutional.  Thus, as the Tenth Circuit stated, "we have little trouble concluding that any *Booker* error was harmless." *Zunie*, 444 F.3d at 1237.  This decision is clearly aligned with other Tenth Circuit cases.  *See United States v. Corchado*, 427 F.3d 815,

821 (10th Cir. 2005); *United States v. Riccardi*, 405 F.3d 852, 875-76 (10th Cir. 2005); *United States v. Bailey*, 187 Fed.Appx. 846, 856 (10th Cir. Jul. 3, 2006) (unpublished).  Accordingly, I recommend that this claim be denied.

B.  Obstruction of Justice Enhancement

In his next claim, Zunie asserts that the Court imposed an illegal sentence when it applied a two-level increase for obstruction of justice.[5]  *See Doc. 88* at 12-17.  To support this claim, Zunie argues that he "was constitutionally entitled to raise any legitimate defense to the charges" and that he is being punished for maintaining his innocence.  *Id*. at 14.

In its Response, the United States contends, and I agree, that Zunie is barred from bringing this claim because it should have been raised on direct appeal.  With the exception of ineffective assistance of counsel claims, the Court will generally not consider collateral attacks on issues a defendant fails to raise on direct appeal unless the defendant can show the requisite cause and prejudice or otherwise show a manifest injustice will occur if the claims are barred. *See Lopez*, 100 F.3d at 117; *United States v. Wright*, 43 F.3d 491, 497-98 (10th Cir. 1994); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Massaro v. United States*, 538 U.S. 500, 504 (2003).  I see no reason to discuss cause and prejudice, though, because, as explained below, Zunie's claim is without merit.

In imposing the obstruction of justice enhancement, Judge Johnson stated:

> All right. Application Note 5 says, 'Some types of conduct ordinarily do not warrant application.'  It's not a prohibition.  It says, again, 'ordinarily do not warrant,' but if you go to Application Note 4 under Section 3C1.1 for obstructing or

---

[5] Zunie also asserts that the district court's fifteen level upward departure was illegal because it was not found by a jury under a reasonable doubt standard of proof.  *See Doc. 88* at 16-17.  Zunie is merely rearguing his constitutional *Booker* claim, which was discussed above, and I will not revisit this claim.

> impeding the administration of justice, it says, 'The following is a non-exhaustive list of examples of the type of conduct to which this adjustment applies,' and Subsection G says, 'Providing a material false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.' I think what we're talking about here is the official investigation. The evidence established that agents with the BIA had attempted to locate the defendant after the accident by calling various family members. After five days, the defendant called the agents to inform them that he had not been the driver of the vehicle and that he had only sustained minor injuries. The defendant, throughout the investigation, continually denied being the driver of the vehicle and provided a name for the person who he reported to be driving the vehicle. However, there was no evidence found to suggest that that person existed, and as noted, the DNA evidence on the air bag over the driver's seat is the defendant's DNA. The BIA agents went to great lengths to try and locate the hitchhiker that the defendant reported picking up and allowing to drive the vehicle. Also, the agents had asked the defendant to go to the Zuni Police Department for a face-to-face interview six weeks after the accident, and he refused. So I do think, based on the evidence that was presented and Application Note 4, that the Probation Office correctly applied the obstruction of justice enhancement under 3C1.1, so I'll overrule the defendant's objection . . . .

*Sent. Tr.* at 34-35.

After a review of the record, I cannot find that the Court erred in its application of U.S.S.G. § 3C1.1. Lying to investigators in and of itself does not support a § 3C1.1 enhancement for obstructing justice. *See United States v. John H. Sitting Bear*, 436 F.3d 929, 933-34 (8th Cir. 2006); *United States v. Pelliere*, 57 F.3d 936, 938-39 (10th Cir. 1995). The false statements must have been material to the investigation. *Id*. As explained by Judge Johnson, here, Zunie did more than deny his guilt. He misled the investigators with stories unrelated to his own actions in an attempt to divert the investigators from focusing their attention on him, and he denied his own involvement by blaming Stephen Qualo. The misleading stories and denial of any involvement were certainly material to the investigation. Therefore, I recommend that this

6

claim be denied.[6]

### III.  Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test.[7]  First, he must show that counsel's performance fell below an objective standard of reasonableness.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy.  *Id.* at 689.  To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong."  *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999).  Second, the petitioner must show he has been prejudiced; that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.  Conclusory assertions are insufficient to establish ineffective assistance.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Because this test is two pronged, if either prong is not met, it is unnecessary to discuss the other.  *E.g., Hill v. Lockhart*, 474 U.S. 52, 60 (1985).

A.  Failure to Complete a *Blakely* Defense

In Zunie's first ineffective assistance claim, he argues that his attorney was ineffective because he "failed to complete his *Blakely* defense."  *Doc. 88* at 19-20.  Zunie asserts that while his attorney told the Court at sentencing "what we need to have is the jury doing the fact-finding

---

[6] Even if such error had existed, it would be harmless because a two-level reduction would bring Zunie's total offense level to 36, which, with a Criminal History Category of I, carries a guideline imprisonment range of 188 to 235 months.  As mentioned above, Zunie was sentenced to 120 months, the statutory maximum.

[7] Ineffective assistance of counsel is a mixed question of law and fact.  *See Boltz v. Mullin,* 415 F.3d 1215, 1221 (10th Cir. 2005).

as opposed to a judge," he should have continued such an argument because the "Court blatantly misconstrued [counsel's] position . . . ." *Id.* Even though Zunie has now brought this claim under ineffective assistance of counsel, he is merely rearguing his constitutional *Booker* claim, which was addressed above and by the Tenth Circuit on direct appeal. *See Zunie*, 444 F.3d at 1236-38. "Although cloaked in the guise of an ineffective claim, this is the same issue decided on appeal and cannot be raised again in a § 2255 motion." *United States v. Anderson*, 17 Fed.Appx 855, 858 (10th Cir. Aug. 21, 2001) (citing *United States v. Cox*, 83 F.3d 336, 342 (10th Cir. 1996)). I note that even if I were to consider the merits of Zunie's claim, it fails. Given my discussion in the *Booker* section above, defense counsel's failure to continue the aforementioned argument does not fall below an objective standard of reasonableness. In addition, Zunie cannot demonstrate prejudice because, as discussed above, any continued *Blakely* argument would have had no effect on his sentence.

B. Failure to Investigate

Zunie argues that his attorney, Mr. Stripp, was ineffective for failing to investigate his defense that another person, Stephen Qualo, was driving his truck at the time of the collision. *See Doc. 88* at 20-21. Zunie contends that "the record is devoid of any evidence reflecting any investigation conducted by defense counsel." *Id.* at 21. The trial transcript, however, shows otherwise.

In a bench conference, Mr. Stripp informed the Court that he spoke to the owner of the liquor store where Zunie alleged he and Stephen Qualo stopped prior to the collision,[8] but

---

[8] Officer Lucio testified that Zunie had:
> [S]aid that, after he picked up this hitchhiker by the name of Stephen, they drove on, on down to Zuni, and before they got to Zuni, they stopped at this liquor store by he name of El Sabino, and when he stopped there, he dropped off Stephen, and he said that Stephen went inside the bar or the liquor store and

elected not to subpoena him based on the information he provided.[9] *See Trial Tr.* at 409. It is reasonable for counsel to curtail an investigation if available information indicates that further inquires would be fruitless. *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003). Further, Zunie has made no specific and particularized factual allegations that Mr. Stripp failed to pursue a lead to obtain evidence that would support his claim of innocence. *See Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005). Accordingly, I cannot find that counsel's performance was anywhere near unreasonable or that, but for counsel's alleged failure, the result of the proceedings would have been any different.

C. Failure to Introduce Exculpatory Evidence

In his last claim, Zunie argues that "defense counsel's failure to raise the defense that [Zunie] was innocent, and not the driver of the vehicle, was an egregious failure." *Doc. 88* at 21. As support for this claim, Zunie points to Mr. Stripp's statements at sentencing regarding the public welfare enhancement. *Id.* at 21. Specifically, he directs the Court's attention to Mr. Stripp's statement that he "would have presented evidence to show that Mr. Zunie could not have been in the vehicle that Mr. Chaves testified was running people off the road." *Id.* at 22. Zunie contends that it "is inconceivable that any attorney in possession of the type of evidence which defense counsel said he had, would even consider not presenting it to the jury" and that "such evidence, if reliable, would have exonerated [Zunie] . . . ." *Id.*

I see no merit to this claim. The above quotation is taken out of context. Mr. Stripp was

---

bought some beer and then came back out and he got back into his truck, and
they drove on a little bit further down from that liquor store and stopped again,
and that's when he said that he switched drivers with this Stephen Qualo person.
*Trial Tr.* at 346-47.

[9] The owner of the liquor store initially told Zuni police that he knew a Stephen Qualo, but retracted this statement. *See Trial Tr.* at 409.

setting forth an argument that another truck had run cars off the road prior to the accident.  As Mr. Stripp argued:

> I will say that, in the discovery that the United States provided to me, their own discovery would tend to show that Mr. Zunie was not in that vehicle. I will also state that, after the fact, while Mr. Zunie has been held, there – there was a red pickup truck out in my neck of the woods on Highway 53 similar in conduct to what Mr. Chavez described that caused a fatal accident. They did not catch the driver, but this red pickup truck ran somebody off the road into another vehicle, causing a head-on collision that resulted in the death of the female driver, a very similar situation to what Mr. Chavez described.  So in terms of this, the public welfare issue, Your Honor, the -- I do not believe that an upward departure is warranted.

*Sent. Tr.* at 41-42.  Contrary to Zunie's assertion, Mr. Stripp's comment was directed at attempting to counter the two-level public welfare enhancement and does not demonstrate that Mr. Stripp was withholding evidence that could have exonerated Zunie.  However, even if such evidence was introduced at trial, Zunie cannot establish that the result of the proceeding would have been different.  Simply put, the evidence presented to the jury showed that Zunie was the driver of the Dodge Ram involved in the collision.[10]

To the extent Zunie is claiming that counsel was ineffective for failing to introduce other exculpatory evidence at trial, his claim fails because he has made no specific showing as to the exculpatory evidence Mr. Stripp failed to introduce.  Therefore, his claim is conclusory and

---

[10] For example: (i) DNA evidence taken from the driver's side airbag matched Zunie's DNA (*Trial Tr.* at 317-330); (ii) Zuni Police Officer Lucio testified that Zunie slipped and told him, "I was maintaining my lane [at the time of the accident]" (*Trial Tr.* at 359-60); (iii) Officer Lucio also testified that the passenger's seatbelt of the Dodge Ram did not appear to be engaged or worn at the time of the collision, but that the driver's side seatbelt was stretched (*Trial Tr.* at 386-87); (iv) Carla Laweka testified that Zunie approached her after the accident smelling strongly of alcohol and asked, "What's wrong? What happened?" (*Trial Tr.* at 451, 459-62); (v) Carla Laweka also testified that after the accident, Zunie attempted to start his truck, and, when it would not start, fled into the woods (*Id.*); and (vi) a witness who saw the collision and rushed to the vehicles after the collision only observed one person in the driver's seat of the Dodge Ram (*Trial Tr.* at 163).

insufficient to establish ineffective assistance of counsel. *See Fisher*, 38 F.3d at 1147; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1) Zunie's § 2255 motion be denied; and

2) that CV 07-671 WJ/CEG be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the Proposed Findings and Recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE